# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

TRI-STATE SURGICAL SUPPLY & EQUIPMENT, LTD.

        *Plaintiff*,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

        *Defendant.*

Index No. _____

---

## COMPLAINT

Tri-State Surgical Supply & Equipment, Ltd., by and for its complaint against Liberty Mutual Fire Insurance Company, alleges as follows:

### THE PARTIES

1. Plaintiff Tri-State Surgical Supply & Equipment, Ltd. ("Tri-State") is a New York corporation with its principal place of business in Brooklyn, New York.

2. Upon information and belief, defendant Liberty Mutual Fire Insurance Company ("Liberty") is a Massachusetts corporation with its principal place of business in Massachusetts.

### BACKGROUND

3. Tri-State is engaged in the business of selling and distributing medical supplies and equipment to health care facilities across the nation.

4. Tri-State owns and/or leases a number of locations.

5. Liberty is engaged in the business of, *inter alia*, selling property insurance.

6. Starting in February 2010, Liberty provided property insurance to Tri-State.

7. In February 2012, Liberty issued policy number YU2-Z11-260210-042 (the "Policy") to Tri-State.

1

8. The Policy provided property insurance for multiple Tri-State locations effective from February 1, 2012 to February 1, 2013.

9. The Policy contained a flood endorsement (the "Flood Endorsement").

10. The Flood Endorsement provided, subject to certain terms and conditions, that Liberty would "pay for direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement."

11. The Schedule to the Flood Endorsement provided that all "covered property" was included within the Flood Endorsement.

12. The Policy defines "covered property" as "property insured by this policy."

13. The Schedule to the Flood Endorsement also provided that the Policy's limit of liability for flood damage was $1,000,000 per occurrence.

14. The Schedule to the Flood Endorsement also provided that, with the single exception of Tri-State's facility located at 101 Kentile Rd South, the deductible amount for claims due to flood damage at any Tri-State location would be $50,000.

15. The deductible for the 101 Kentile Rd South location was set at $100,000.

### THE COLUMBIA WAREHOUSE

16. Tri-State leased a warehouse located at 700 Columbia Street, Brooklyn, New York (the "Columbia Warehouse").

17. The Columbia Warehouse was not listed as a covered location on the Policy at the time of issuance.

18. On April 12, 2012, Diana Silva, Tri-State's insurance intermediary, sent an email to William Kramer at Liberty requesting that Liberty issue an endorsement adding the Columbia Warehouse location to the Policy.

2

19. Liberty failed to respond to Ms. Silva's request.

20. On May 16, 2012, Ms. Silva followed up with Mr. Kramer to confirm that the Columbia Warehouse was endorsed to the Policy.

21. Upon learning that Mr. Kramer was out of the office, Ms. Silva forwarded her request to two other Liberty underwriters – Christa Weltz and John Nordenson – emphasizing that the matter was "urgent" and asking them to "expedite ASAP."

22. Six days later, Mr. Nordenson emailed Ms. Weltz admitting that "this one may have fallen through the cracks" and directing her to "process the new location for both the Property & GL policies as requested by Dina."

23. On May 23, 2012, Ms. Silva again asked for confirmation that the Columbia Warehouse was endorsed as a covered location. Ms. Weltz responded to Ms. Silva that she was "working on getting this done."

24. Four months later, on September 19, 2012, Ms. Silva once again requested confirmation from both Ms. Weltz and Mr. Kramer that the Columbia Warehouse was endorsed to the Policy.

25. By email dated October 3, 2012, Ms. Weltz confirmed that the Columbia Warehouse was endorsed to the Policy as of September 27, 2014. She explained, however, that she was unable to send Ms. Silva a copy of the actual change endorsement because it was "not uploaded into the system yet."

26. Ms. Weltz promised to send Ms. Silva a copy of the endorsement as soon as she received it.

27. By invoice dated September 27, 2012, Liberty requested payment of the premiums associated with its coverage of the Columbia Warehouse.

3

28. On or before October 24, 2012, Tri-State mailed Liberty the requested premiums.

## SUPER STORM SANDY FLOODS THE COLUMBIA WAREHOUSE

29. On or about October 29, 2012, a storm (hereinafter, "Super Storm Sandy") struck the New York metropolitan area.

30. As a result of Super Storm Sandy, the Columbia Warehouse was flooded.

31. The Columbia Warehouse was, on that date, stocked with medical supplies and equipment (the "Inventory").

32. Due to the flooding, much of the Inventory was damaged.

33. Tri-State promptly notified Liberty of the loss.

34. On November 12, 2012, Liberty inspected the location and confirmed that it had been flooded.

35. Liberty also confirmed that the flooding had damaged the Inventory.

36. Tri-State suffered a loss to the Inventory totaling $505,196.62 as the result of Super Storm Sandy.

37. Tri-State also spent an additional $12,318.25 to remove and dispose of the Inventory.

38. Tri-State provided Liberty with documentation verifying these damages.

39. Additionally, as a result of the destruction of the Inventory, Tri-State was prevented from filling customer orders.

40. While Tri-State was able to satisfy some customers by locating similar products to the ones ordered (often to the detriment of its profit margins), it was unable to fill many other orders at all.

4

41. As a result, many Tri-State customers purchased their medical supplies from Tri-State's competitors.

42. These losses, in turn, caused Tri-State to incur significant additional damages in the form of higher interest rates.

43. Tri-State's financial losses from Super Storm Sandy and Liberty's failure to pay the claim resulted in its inability to conform to a covenant in its loan agreement with Capital One bank.

44. The bank responded by significantly raising Tri-State's interest rates.

### TRI-STATE FINALLY RECEIVES THE ENDORSEMENT

45. Liberty issued an endorsement adding the Columbia Warehouse to the Policy.

46. The endorsement was not sent to Tri-State.

47. Upon information and belief, the endorsement was sent to the insurance intermediaries within four days of Super Storm Sandy striking New York.

48. The endorsement was backdated to April 2012.

49. The insurance intermediaries saw the endorsement, for the first time, subsequent to Super Storm Sandy.

50. Upon reading the endorsement, Ms. Silva discovered that it specifically excluded flood coverage for the Columbia Warehouse.

51. Liberty had never previously indicated that Policy's coverage for the Columbia Warehouse was in any way different from the Policy's coverage of Tri-State's other locations.

52. By letter dated December 4, 2012, Liberty denied coverage for Tri-State's damages on the basis that the Policy does not cover the Columbia Warehouse for flood related damage.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

53. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 52, above.

54. By operation of law, the Columbia Warehouse was covered under the Policy.

55. The terms of the contract between Liberty and Tri-State were identical to the terms that the parties had previously agreed would apply to all other Tri-State locations covered under the Policy.

56. Thus, the Policy provided flood coverage for the Columbia Warehouse.

57. Tri-State performed all, or substantially all, of its responsibilities under the Policy.

58. Tri-State suffered a loss due to the flooding of the Columbia Warehouse.

59. Tri-State timely notified Liberty of its loss.

60. Liberty, in violation of the Policy's terms, has refused to cover Tri-State's damages.

61. Tri-State has been damaged by Liberty's breach of the Policy terms.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Equitable Estoppel)

62. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 61, above.

63. The Policy provided flood coverage for all Tri-State locations that it covered.

64. Liberty represented that the Columbia Warehouse was covered under the Policy.

65. Liberty failed to state that the Policy's coverage for the Columbia Warehouse was different, in any material respect, from the Policy's existing coverage of other Tri-State locations.

66. Liberty failed to state that the Policy's coverage for the Columbia Warehouse did not extend to flood damage.

67. In reliance on Liberty's representation that the Columbia Warehouse was covered under the Policy, Tri-State did not seek flood coverage for the Columbia Warehouse from any other insurer.

68. In reliance on Liberty's representation that coverage was bound, Tri-State stored the Inventory in the Columbia Warehouse.

69. Super Storm Sandy struck the New York metropolitan area on October 29, 2012.

70. Tri-State was not notified of the non-conforming endorsement until after Super Storm Sandy struck New York.

71. Super Storm Sandy caused the Columbia Warehouse to flood, resulting in significant damage to Tri-State.

72. Liberty has refused to reimburse Tri-State for its damages.

73. Liberty should be equitably estopped from denying that the Policy provided flood coverage for the Columbia Warehouse on the same terms that it provided flood coverage to Tri-State's other locations.

**WHEREFORE**, plaintiff Tri-State Surgical Supply & Equipment, Ltd. requests that an order be entered herein:

a) Entering judgment in favor of Tri-State in an amount to be determined at trial, but certainly in excess of $500,000, plus interest, attorneys' fees, and costs;

7

b) Granting such other and further relief as this Court may deem just, proper, and equitable, together with the additional amounts interest, costs, and disbursements of this proceeding as permitted by law.

Dated: Kew Gardens, New York
October 28, 2014

>LIPSIUS-BENHAIM LAW LLP
>*Attorneys for Plaintiff*
>
>By: _____
>Ira S. Lipsius (ilipsius@lipsiuslaw.com)
>Alexander J. Sperber (asperber@lipsiuslaw.com)
>80-02 Kew Gardens Road, Suite 1030
>Kew Gardens, New York 11415
>Telephone: 212-981-8440
>Facsimile: 888-442-0284